**In re David N. HARTER, Debtor.**

**No. 97–01634–B13.**

United States Bankruptcy Court,
S.D. California.

May 23, 2002.

---

prior to the hearing on the motion, he paid the Trustee the outstanding balance of $130.00. The Debtor argues the case should not be dismissed because the plan is complete.

Rancho Rios Homeowners Association ("RR HOA") joins the Trustee's motion. It contends the case must be dismissed because the Court lacks authority to allow a cure beyond the maximum five-year plan period provided in § 1322(d). Additionally, RR HOA argues the modified plan required the Debtor to contribute his inheritance from the *Estate of Eldean N. Harter* when he receives it. It contends the Trustee must receive this payment before the plan is complete.[1]

After considering all of the evidence and arguments of counsel, the Court holds the Debtor can complete the plan within a reasonable time period beyond the maximum five-year plan period provided in § 1322(d). Additionally, it holds the modified plan merely required the Debtor to contribute his inheritance if he received it within the five-year plan period, or such additional time it took the Debtor to complete the minimum plan payments provided under the plan. As part of the modification order, the Court directed the Debtor to seek an interim distribution from the probate estate, and ordered him not to interfere with or delay the distribution of the assets from the probate estate. If the Debtor complied with this provision in good faith but was unsuccessful in obtaining a distribution, then the plan is complete.

Greta Glavis, Glavis & Bloom, PLC, San Diego, CA, for Creditor.

David Nelson Harter, San Diego, CA, pro se.

David Skelton, San Diego, CA, trustee.

## MEMORANDUM DECISION

LOUISE DECARL ADLER, Bankruptcy Judge.

### I.

### INTRODUCTION

The chapter 13 trustee ("Trustee") moves to dismiss the case for cause because the Debtor failed to complete the plan within the five-year plan period. The Debtor's opposition memorandum argued that he had overpaid the plan. However,

### II.

### FACTS

The Debtor filed his chapter 13 case on February 4, 1997. After months of pro-

---

**1.** RR HOA raised the above arguments for the first time at the hearing on the motion to dismiss.

tracted litigation, the Debtor's second amended plan was confirmed over the objection of RR HOA. The second amended plan provides:

> There shall be paid to the Chapter 13 Trustee $260.00 each month by debtor(s) .... Debtor(s) ... agree to pay sufficient funds to the Trustee on or before five years from the commencement of this case to fully complete this Plan. 10. Unsecured Claims .... Trustee shall pay dividends prorata [sic] on claims allowed unsecured herein to 25% of the amount allowed in full satisfaction thereof.[2]

It is undisputed that the Debtor had until March 21, 2002 to complete his plan ("Plan Completion Date").

In February 2000, RR HOA moved to modify the plan on the ground that the Debtor had become entitled to a postpetition inheritance which would enable the Debtor to pay 100% of his unsecured claims. After more protracted litigation, the Court issued an order modifying the plan which stated:

> 1. The motion to modify the chapter 13 plan is granted in part, as follows:
> a. Immediately upon the debtor's receipt of distributions from the probate proceedings ... (the "Estate Distributions"), the debtor shall turn over such Estate Distributions to his chapter 13 trustee for distribution to the debtor's unsecured creditors. The debtor's chapter 13 plan shall be amended to provide for increased distribution to the debtor's unsecured creditors in an amount equal to the Estate Distributions ....
> b. The debtor shall seek an interim distribution of assets from the *Estate of Eldean N. Harter* and shall not interfere with or delay the distributions of assets from the *Estate of Eldean N. Harter.*
> 2. Except to the extend granted above, the motion to modify the debtor's chapter 13 plan is denied.[3]

RR HOA then moved for findings of fact concerning the estate's priority ahead of the Debtor in receiving the Estate Distributions, and for an order authorizing and directing the Trustee to file a "Notice of Right to Proceeds" in the probate proceeding. In support of its motion, RR HOA argued the order was necessary because there was a substantial risk the Debtor would fail to turn over the Estate Distributions and would continue to thwart the Trustee's efforts to apply the Estate Distributions to the payment of claims.[4] The Court denied RR HOA's motion, and issued a *sua sponte* order clarifying the Modified Plan Order to direct the Debtor to turn over the proceeds from the probate estate within three business days of his receipt.[5]

The Debtor did not receive a distribution from the probate estate. He claims he did not delay the distribution of assets from the probate estate. Further, the

---

**2.** Order Confirming Plan entered August 4, 1997 (this Memorandum Decision refers to the 25% dividend as the "minimum plan payment").

**3.** Order Granting in Part and Denying in Part RR HOA's Motion for Modification of Chapter 13 Plan entered June 15, 2000 ("Modified Plan Order").

**4.** Motion of RR HOA for (1) A Finding of Fact Regarding the Chapter 13 Estate's Priority of Entitlement to Probate Estate Assets and (2)

An Order Authorizing and Directing the Filing of a Notice of Right to Proceeds In the Eldean N. Harter Probate Proceeding, filed May 18, 2001.

**5.** Order Granting Motion (1) Denying Creditor's Request to File Notice in Probate Proceeding; (2) Modifying Order Entered on June 15, 2000; and (3) Denying Debtor's Application for a Restraining Order, entered August 3, 2001 ("Clarification Order").

Debtor claims he attempted to obtain an interim distribution, but the state court refused to listen to him because his applications did not comply with their local procedural rules, and because he had been declared a vexatious litigant.[6] The Court makes no findings concerning the Debtor's claims.

On February 13, 2002, the Trustee filed this motion to dismiss the case for failure to complete the plan within the five-year plan period. The Trustee indicates the Debtor still owed $130.00 to complete the minimum plan payments on the Plan Completion Date. On April 10, 2002, the Debtor made the final minimum plan payment.

## III.

### ISSUES

1. Can the Debtor complete his plan beyond the maximum five-year period provided in § 1322(d)?

2. Did the Debtor complete all of the payments under the plan?

## IV.

### DISCUSSION

1. ***Can the Debtor Complete His Plan After the Five-Year Period Provided in § 1322(d)***

■ At issue is the Court's ability to allow the Debtor to pay off his plan after the maximum five-year plan period provided in § 1322(d). Section 1322(d) provides:

**§ 1322. Contents of plan**

(d) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, *but the court*

*may not approve a period that is longer than five years.*

(Emphasis added.) RR HOA argues the five-year maximum plan period is a "drop dead" date, and the Court simply has no authority to allow the Debtor to cure the plan after this date no matter how small the amount. [Transcript from April 16, 2002 hearing Re: Trustee's Motion to Dismiss at p. 20:9–12 ("Transcript").] According to RR HOA, the case of *In re Goude*, 201 B.R. 275 (Bankr.D.Or.1996), says § 1322(d) contains a "drop dead" date.

The Court has reviewed *In re Goude* and is not persuaded that this is what it says. *Goude* involved a trustee's motion to dismiss the case for failure to pay a secured priority tax claim in full during the five-year plan period. *Goude*, 201 B.R. at 276. The holding in *Goude* is no longer good law in this circuit in light of the Ninth Circuit's ruling in *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir.1999). Even if it were good law, *Goude* did not address the issue of whether the debtors could complete their payments after the maximum plan period of five years. *Goude* did not reach this issue since *the debtors indicated they were unable to make up the short fall* in their plan payments. *Id.* at 276.

Similarly, RR HOA's additional case authorities do not support its position that the case must be dismissed after five years. RR HOA directed the Court's attention to *In re Rivera*, 177 B.R. 332 (Bankr.C.D.Cal.1995), but this case allowed the debtors to complete the plan payments after the plan period had elapsed. *Id.* As the plan period was only three years, it was unnecessary to address whether the

---

**6.** Request for Additional Judicial Instruction Regarding Judge Adler's Order Directing Debtor to Seek "Interim Distribution" of San Francisco Probate filed February 13, 2002

("Request for Additional Instructions"). The Minute Order from the March 12, 2002 hearing indicates the Request for Additional Instructions was taken off calendar as moot.

debtors could complete their plan after the maximum plan period of five years.

In contrast, the case of *In re Black,* 78 B.R. 840 (Bankr.S.D.Ohio 1987), addressed this precise issue. In *Black,* the court confirmed an amended plan providing for completion of the payments in the 59th month. Thereafter, the trustee moved to dismiss the case pursuant to § 1322(c)[7] because the plan, then in its 62nd month, had exceeded the 60–month bar contained in § 1322(c). The court denied the motion because § 1322(c) does not provide for dismissal of the case. It reasoned:

> In construing the language of the statute, the Court concludes that, while § 1322(c) [renumbered § 1322(d)] instructs the Court on the maximum length ... under a Chapter 13 plan, § 1322(c) contains no provision for dismissal of a Chapter 13 plan whose payments extend past a five-year period, but which otherwise complied with the duration limitations at the time of confirmation. Thus, while Congress' intention to prohibit lengthy plans is evidenced in its legislative history, case precedent and the Code, § 1322(c) cannot serve as statutory support for the dismissal of a properly-confirmed plan whose payments have continued beyond five years.

*Id.* at 842. The court held the procedure for requesting dismissal of a chapter 13 case is set forth in § 1307(c). *Id.* This section permits the court, on request of the debtor, a creditor, or the trustee, to dismiss or convert a chapter 13 case for "cause," and it enumerates ten specific instances of cause.

In deciding whether to dismiss pursuant to § 1307(c), the court found no "cause" existed to dismiss the case because movants failed to assert or establish sufficient cause under § 1307(c). *Id.* at 843. Addi-

tionally, the court reasoned dismissal is inequitable given the fact that the plan provided a 100% dividend to general unsecured claims, and the plan was substantially complete. *Id.; accord* 8 L. King, *Collier On Bankruptcy,* ¶ 1322.17[1] at 1322–55 (15th ed. Rev.2001)(section 1322(d) focuses on the payments *provided for* by the plan, and if the debtor is substantially complying with the plan, the court should allow the plan to be completed within a reasonable period of time)(emphasis in original).

■ The Court adopts the reasoning of *Black* and holds § 1322(d) does *not* contain a "drop dead" provision that mandates dismissal of the case after five years. Since no other ground for dismissal was enumerated, and since the Debtor tendered the amount to complete the minimum plan payments within a reasonable period of time after the Plan Completion Date, the Court will deem the plan cured.

### 2. Did the Debtor Complete All of the Payments Under the Plan?

■ Additionally, RR HOA argues the Debtor did not complete all of the payments required under the plan, and he is not entitled to a discharge, because the modified plan requires the Debtor to contribute his inheritance when he receives it. It contends the bankruptcy case must remain open until the Debtor's entire inheritance is paid to the estate, or until creditors are paid 100% of their claims.

RR HOA's argument is inconsistent with its contention that the court must dismiss the case after five years. It has directed the Court's attention to *In re Profit,* 269 B.R. 51 (Bankr.D.Nev.2001), wherein it claims the court allowed a case to stay open beyond five years to accept a tax return into the estate. According to RR

7. This section was renumbered § 1322(d) by the Bankruptcy Reform Act of 1994.

HOA, *Profit* instructs that the payments received *from the debtor* must be complete within five years. Thereafter, the estate can remain open to accept assets from a third party source. [Transcript at p. 16:7–25]

The Court reads *Profit* differently. *Profit* involved the issue of whether the trustee's motion to modify a chapter 13 plan was timely. *Profit*, 269 B.R. at 55. The debtors argued the motion was untimely because it was filed after they completed all of the $26,000 in payments provided under their plan. *Id.* at 54–55. The court rejected this argument, reasoning that in addition to the $26,000 in payments, the plan included a provision requiring the debtors to pay over any tax refunds that they received during the life of the plan. *Id.* at 56. The court found the provision for turnover of tax refunds was a plan payment. *Id.* Because the debtors had applied their 1998 tax refund to their 1999 tax liability instead of paying the refund to the trustee, the court held the debtors had failed to make all of their plan payments and the plan was not yet complete. *Id.*

Accordingly, *Profit* stands for the simple proposition that debtors must make all of their plan payments to complete their plan. It cannot stand for the proposition that the case can remain open after the five-year period has elapsed, as the debtors paid the trustee an amount equal to their 1998 tax refund prior to the end of five years. *Id.* at 54–55.[8]

Rather, the Court will look to the plain language of the plan to determine the Debtor's obligations. The plan requires the Debtor to pay $260.00 per month and to pay sufficient funds *on or before five years* from commencement of the case to fully complete the plan. Further, the plan provides that unsecured creditors will receive a dividend of 25% of their allowed unsecured claims in full satisfaction of their claims. Thereafter, the Debtor was directed to turn over his Estate Distributions immediately upon his receipt, and the plan was amended to increase the distribution to unsecured creditors in an amount equal to the Estate Distributions that the Debtor receives. [Modified Plan Order at ¶ 1.a.] While this modification could be construed to require the Debtor to turn over his Estate Distributions regardless of when he receives them, the Court rejects this interpretation for several reasons.

First, the Modified Plan Order does not expressly state that the Debtor must turn over his Estate Distributions regardless of when he receives them. Given the silence, the Court concludes that the first paragraph of the plan governs the issue of the plan's length. This paragraph expressly provides that the plan period is five years.

Second, RR HOA's proposed interpretation is inconsistent with paragraph 1.b. of the Modified Plan Order. Because of the five-year plan period, the Court directed the Debtor to seek an interim distribution from the probate estate and prohibited the Debtor from interfering with or delaying the distribution of assets from the probate estate. There was an expectation that the Debtor would receive his Estate Distribution during the plan period.

Finally, RR HOA's proposed interpretation conflicts with § 1322(d) which expressly prohibits a court from confirming a plan that provides for payments over a period longer than five years. If RR HOA's proposed interpretation is accepted, then the Court confirmed a plan that provided the plan would continue indefinitely

---

**8.** The decision indicates: the debtors filed their petition on May 9, 1996; the Trustee filed his motion to modify the plan on December 13, 2000; and the debtors paid their 1998 tax return to the trustee on January 19, 2001.

until the Debtor received his inheritance or unsecured creditors were paid 100% of their allowed claims. This is not what the plan provides, and this is certainly not what the Court intended.

For all of the forgoing reasons, the Court rejects RR HOA's argument that the plan requires the Debtor pay over his inheritance regardless of when he receives it. The plan required the Debtor to contribute the Estate Distributions that he received within the five-year plan period, or the additional time that it took the Debtor to complete the minimum plan payments, and the Debtor was directed to help facilitate the likelihood that he would actually receive his Estate Distributions before the plan was completed. If the Debtor has complied with the Court's directive in good faith and was unsuccessful in obtaining a distribution, then the plan is complete.

## V.

### CONCLUSION

The motion to dismiss the case is denied. The Debtor made the final minimum plan payment within a reasonable period of time after the Plan Completion Date. Accordingly, the Debtor will be deemed to have completed the plan and will be entitled to his discharge pursuant to § 1328(a) *if* the Debtor complied with paragraph 1.b. of the Modified Plan Order in good faith. The Debtor is directed to file an order consistent with the terms of this Memorandum Decision within ten (10) days of its date.